### JAKE WILSON ET AL. v. MRS. DELLA WHITE.

#### Decided July 2, 1902.

**Trial—Improper Remarks by Judge.**

Where a wife sued on a liquor dealer's bond to recover for the sale of liquor to her husband, and it was a controverted issue as to whether or not the husband was an habitual drunkard, remarks by the judge to husband, who was a witness in the case, made in the presence and hearing of the jury, commanding him not to get drunk during the trial and threatening him with imprisonment if he did so, constituted reversible error.

Appeal from Erath. Tried below before Hon. W. J. Oxford.

*C. Nugent* and *Eli Oxford,* for appellants.

*M. J. Thompson,* for appellee.

HUNTER, Associate Justice.—On the trial of this cause, which was an action brought by appellee against appellant Wilson and his sureties on a saloonkeeper's bond for selling and giving intoxicating liquors to the appellee's husband, Pete White, who was alleged to be an habitual drunkard, at the close of Pete's testimony and as he was leaving the witness stand, in the presence and hearing of the jury, the judge trying the cause said to him: "You are excused for the present; but, Pete, I notify you now that if you get drunk during this trial I will put you in jail and keep you there until you get sober. Now do you

understand me? If you get drunk, I will put you in jail and hold this jury till you get sober. And if any one of the other witnesses in this case gets drunk during the trial of this case I will fine them and put them in jail. I am going to try this case, and am not going to be fooled with." To these remarks of the judge defendant's counsel promptly excepted, when his honor replied: "I'll give you your bill, but I mean just what I say." To which reply appellant's counsel also promptly excepted. The court signed the bill as above, with this explanation: "Approved with the explanation that the court had experienced great difficulty in procuring the attendance of this witness and some others; in fact he and some others had to be attached and brought into court after disobeying subpoenas, and counsel for plaintiff suggested to the court that he would wish to use the witness again and expressed a fear that he might become too much intoxicated to testify. The court then gave the admonition to the witness. This might have been improper in the presence of the jury, but it is evident in this county that a trial of this sort with the class of witnesses that plaintiff had to rely upon, surrounded by the influences and environments with which they were surrounded, would be a farce and bring the tribunal allowing any such trial into utter contempt if it did not take these precautionary measures."

.The jury found a verdict against the defendant and sureties for $1000

Whether Pete was an "habitual drunkard" was a controverted question on the trial, and the evidence on this issue was quite conflicting. The witnesses are all agreed, it seems, that Pete was fond of a toddy, and sometimes took it straight, and often refreshed himself with a schooner of beer. But Pete says he "worked 300 days in the year, and don't see how he could be a drunkard. He has gone as long as three months without getting drunk," though he is 58 years old, a stone mason, and had been taking a little along ever since he was 20 years old. Other witnesses who had known him for years had often seen him at work, but had never seen him drunk, and several of such testified that they did not consider him an habitual drunkard, while others so considered him, and had often seen him drunk.

Under our statute and the conditions of the bond sued on the penalty is $500 for selling or giving intoxicating liquor to an "habitual drunkard." In the same chapter the terms "habitual drunkard" is defined as follows:

"Art. 5060h. An habitual drunkard within the meaning of this chapter, is one who makes it a habit, or who habitually becomes intoxicated by the voluntary use of intoxicating liquors; and in all suits for the breach of such bond for unlawfully selling to an habitual drunkard, the question whether or not such person is an habitual drunkard shall be determined by the court or jury trying such case, as any other fact."

The court properly instructed the jury as to what constituted an habitual drunkard within the meaning of the terms used in the bond, but we think the remarks of the judge, made in the presence and hearing of the jury, were well calculated to lead them to believe that he

knew him or believed him to be so addicted to the habit of getting drunk that he probably could not keep sober until the trial was concluded unless the judicial threat of imprisonment in jail was held in terrorem over him.

The assignment of error upon which the judgment is reversed, while it does not strictly conform to rule 29, is in substantial compliance therewith, and the objections thereto are overruled.

For the error indicated, the judgment herein is reversed and the cause remanded for a new trial.

*Reversed and remanded.*